1 Good morning, Your Honors, and may it please the Court, Julia Malkina, on behalf of BP. This appeal raises the threshold issue of abuse of discretion and two strictly legal questions concerning the proper interpretation of the Economic and Property Damages Settlement Agreement. First, whether Exhibit 4C of the agreement requires the CSSP to treat equipment rental expenses as variable, not fixed, when included in the claimant's financial statements as COGS. And second, whether the CSSP should consider a claimant's work for its real estate developer affiliates in applying the agreement's real estate developer exclusion. In light of the Court's request for supplemental briefing on the first question, I will begin with the expenses issue. As the claims administrator twice recognized in this case, Exhibit 4C required the CSSP to treat Woodruff's equipment rental expenses as variable. Exhibit 4C provides, for claimants that include COGS in their financial statements, COGS will be treated as a variable expense after excluding payroll, amortization, depreciation, insurance expense, interest expense, and contract services. Courts have repeatedly held that will is a compulsory term, not a permissive one. Will be treated in Exhibit 4C is thus a mandatory command. But doesn't 4C, when it lists the expenses that are not included, variable under cost of goods sold, it says including the following, doesn't it, indicating it's not exclusive? No, Your Honor. The first mention in Exhibit 4C of the COGS rule is unequivocal. There it says that the CSSP must treat, COGS will be treated as a variable expense after excluding six enumerated COGS. After excluding six enumerated COGS. And I believe Your Honor is referring to Part C of Step 2 of the variable profit definition where it does use the word including. But here, Your Honor, the parties to the settlement agreement specifically considered fixed expenses, specifically considered rental expenses. After all, rental expenses are in Exhibit 4D's fixed expenses list. But the parties to the settlement agreement did not include rental expenses as one of the enumerated COGS. And that's in contrast to three other types of expenses that are on Exhibit 4D's fixed expenses list but that are also included in Exhibit 4C as the enumerated COGS that exclude from variable expenses. So you have there, Your Honor, insurance, interest expense, and contract services. They're all on Exhibit 4D's fixed expenses list. But they're also enumerated by the parties as excluded from variable expenses when they're treated as COGS. So the parties knew how to do this and they did not do it for rental expenses. Here, Your Honor, Woodruff included COGS in its financial statements. One of those COGS was equipment rental expenses. Equipment rental expenses are not one of the six enumerated COGS excluded from variable expenses under Exhibit 4C. Exhibit 4C thus compels their treatment as variable. Why aren't we looking at 4D instead of 4C in this circumstance? Because it's much more specific because it talks specifically about the rental expenses. For purposes of Exhibit 4D, COGS are listed both on Exhibit 4D's fixed expenses list and on Exhibit 4D's variable expenses list. But this type of thing, but fixed costs are rental expenses on 4D specifically in the 46 categories in 4D. Yes, you do have rental expenses on 4D, but you have to remember the nature of COGS, Your Honor. When something is a COGS, it will always be something else because a COGS is a cost of goods sold, which is an economic concept. So cost of goods sold will always be something else. So there are many items on Exhibit 4D's fixed expenses list that also can be COGS. But it's not supposed, we're not supposed to look at the label. We're supposed to look at the type of cost underlying the label. So they're correct in looking at the underlying thing underneath the label, whereas your argument is looking at the label. No, Your Honor. Our argument is not looking at the label. In this Court's cases in Texas Gulf Seafood and the management fee case, the questions there was what type of expense is at issue. In Texas Gulf Seafood, the claimant labeled its expenses as supplies, which is on Exhibit 4D's fixed expenses list, and the claims administrator thought that those expenses looked more like consumable goods. So it was a question of whether the expenses were supplies or consumable goods. In the management fee case, it was fees or something else. Here we have no dispute as to whether the expenses are COGS. Everyone here agrees that they're COGS. BP has never disputed this, and claimant has never disputed this. Not in two rounds in the CSSP, not in the District Court, not in its brief in this Court. Because there's no factual dispute as to the fact that these expenses are COGS, Exhibit 4C provides the rule. And under Exhibit 4C, COGS must be treated as variable, except for— I mean, a lot of fixed expenses are costs. That doesn't—just because you label them as costs doesn't tell you anything, does it? Well, it does under the settlement agreement, Your Honor. Well, but I mean, if you're looking at the real nature of the costs, I mean, if you have a building rented and you pay rent every month, that's going to be a fixed expense. Your Honor, for purposes of the settlement agreement, the parties specifically negotiated and agreed that COGS will be variable expenses, except for six enumerated COGS. And here, rental expenses are not one of the six enumerated COGS, so they're variable. I think taking a step back, you can think about classifying expenses as a two- to three-step process depending on the type of expense. The first step is determining what type of expense it is. And that's where this Court's Texas Gulf Seafood case and the management fee case apply. So that's the question of what type of expense is it. Is it supplies or consumable goods? Is it fees or is it something else? And here we have no dispute with respect to that. Here we have COGS. Then step two is looking to Exhibit 4D, and you look to Exhibit 4D to determine whether an expense is fixed or variable. Exhibit 4D will almost always tell you the answer to that. But for COGS, you have an additional rule because COGS appear on both Exhibit 4D's fixed expenses list and their variable expenses list. So for COGS, you look to Exhibit 4C, and Exhibit 4C tells you that COGS are variable expenses except for six enumerated COGS. And rental expenses are not one of those six enumerated COGS. So Woodruff's Equipment rental expenses must be treated as variable. That's the clear command in Exhibit 4C, will be treated. Counsel, assuming, Arguendo, that you were correct in your very precise argument here today, that still doesn't mean that the district court abused its discretion in refusing to take the issue. The court has a . . . just being wrong is not the test. It has to be a problem that's going to be repeated over and over again, but we've worked through many of these issues in the past couple of months. We have many of these case decisions coming out right now, and it seems that the appeals panels have worked through these issues too. Why is . . . what is the argument that the court abused its discretion? That's a separate independent . . . it's not just enough to be wrong. And I'm not . . . assuming I'm spotting you the wrong. Absolutely, Your Honor. Under this court's precedence, the district court abused its discretion twice over in failing to review the CSSP's treatment of Woodruff's Equipment rental expenses. First, as we just discussed, that treatment clearly contradicted, in BP's view, Exhibit 4C of the settlement agreement. That's a clear ground for review under this court's precedence. No, it has to actually be something that's going to be repeated. Being wrong in a one-off case is not a reason to review a case under our precedent. Absolutely, Your Honor, and this is not a one-off issue either. We've identified at least nine other appeal panel decisions where appeal panels have considered the precise question of whether equipment rental expenses or rental expenses classified as COGS are fixed or variable. The appeal panels have split their 5-4 with respect to finding whether such expenses are fixed or variable, and there's actually a broader rule here as well. This court's holding would apply to any type of expense on Exhibit 4D's fixed expenses list that can also be treated as COGS, and that's not one of the six enumerated COGS excluded from variable expenses under Exhibit 4C. So while we focused on the specific appeal panel split with respect to rental expenses, you also see appeal panels having troubles with this issue with respect to lease expenses and maintenance expenses, for example, when those types of expenses are classified as COGS. So I would say, Your Honor, that under this court's precedence, this is the precise type of question that the district court should have resolved. You have a clear contradiction of the settlement agreement. It's a pressing question. This court's two recent decisions on classifying variable and fixed expenses shows just how essential this process is for properly calculating CSSP awards. Have we taken care of it? No, Your Honor. Your court's two recent decisions speak to the first step of classifying expenses as fixed or variable. Here we have a special rule on Exhibit 4C that deals with COGS, and the court's two recent decisions do not speak to that rule. And that rule has given appeal panels difficulty in the CSSP. Indeed, I think one thing that's interesting and worth noting here is that this is an issue that is divisive within this case itself. Here you have the appeal panels twice concluding that the rental expenses are variable. So you say that if the claimant designates something as a cost, it doesn't matter that there's another section that specifically says it's fixed. It has to be variable. 4C trumps 4D. Yes, for COGS, Exhibit 4C trumps Exhibit 4D. Why is that? Why would you say that? I mean, how do you justify that? Because the COGS will always be something else, Your Honor. That's the nature of COGS. COGS are an economic concept, so cost of goods sold will always be something else as well. It might be a rental expense, it might be maintenance, it might be supplies. It'll always be something else as well. But there's also a rule that's specific, governed over the general. And here we have a specific 4D. I don't believe that Exhibit 4D is more specific than Exhibit 4C's rule for COGS. And if you were not to treat Exhibit 4C's rule as commanding, then you would read out Exhibit 4C's rule for COGS as well as the COGS label on both Exhibit 4D's fixed expenses list and Exhibit 4D's variable expenses list as well. We also, Your Honor, have an abuse of discretion with respect to the issue of whether the CSSP, with respect to the CSSP's determination that Woodruff isn't an excluded real estate developer. This is also an issue that's reoccurring and divisive. Fifteen appeal panels have considered it and split. And it's also an issue, in our view, that's a clear contradiction of the settlement agreement on a pressing interpretive question. Policy 468 directs the claims administrator to look at materials in the claims file, promotional materials, an entity's website, and other statements from the entity. Why is that remarkable? There might be a split on that question. You've got a specific category in terms of, you know, if it's a real estate developer per se, whereas in this case it's not directly a real estate developer. The question is whether affiliation or association with some real estate entity. So if that's fact-driven, I mean, what in and of itself would be remarkable that all the panels wouldn't come out the same if the facts differ? Your Honor, we don't regard this as a factual question. The legal question at issue here is whether the appeal panels can consider a claimant's work for its real estate developer affiliates in applying the real estate developer exclusion. So it's a legal question as to what facts can be considered by the decision maker in determining whether the exclusion applies. That's a legal question about the interpretation of the settlement agreement. And in our view, if those facts were properly considered here, the appeal panel would have found that Woodruff is an excluded real estate developer. We have statements in Woodruff's claim file that it performs site development, as well as highway construction, utilities, earth moving, and storm drainage. It advertised on its website that it's affiliated with several real estate developers. And it did significant work on various commercial and industrial properties, including the Woodruff Industrial Park. But why don't they have the sound discretion to use whatever facts they think are relevant in the determination? Your Honor, Policy 468 sets out what things the claims administrator is supposed to look at in determining whether an entity is an excluded real estate developer. And those include materials in the claim file, promotional materials, an entity's website, and other statements from the entity. Here, the appeal panel said that it could not consider the affiliations that Woodruff had with its real estate developer. Affiliates calling that BP's guilt by association argument that had been rejected by other appeal panels. Well, or it can consider it and reject it. Yes, Your Honor. And so if it chose not to have that be dispositive, that's its choice. As we read the appeal panel decision, the appeal panels decided not to consider the affiliations because they thought that as a matter of law, they couldn't consider them because this was a guilt by association argument that wasn't allowed under the settlement agreement. In our view, the settlement agreement allows the CSSP to consider a claimant's substantive work for its real estate developer affiliates. If we don't believe that it's forbidden, but instead it just chooses not to, then it would be in the sound discretion, wouldn't it? No, Your Honor, because Policy 468 sets out what types of things the claims administrator is supposed to consider. Well, it can consider but not give it any weight. I don't believe so, Your Honor. For example, if an entity listed real estate development on its tax form as what it does, the CSSP could not not give that any weight. In fact, there's a presumption that that would mean that the entity is an excluded real estate developer. So as I read Policy 468, as BP reads Policy 468, the settlement program is required to consider the various things listed in Policy 468 in determining whether an entity is an excluded real estate developer. All right. Thank you, Your Honors. Thank you. Thank you, Mr. Justice. Appreciate the opportunity. Good afternoon. Be here on behalf of my client, the appellee, Rutherford & Sons claimant in this case. Unfortunately, I've been getting over the flu, so there is a strong likelihood I may be coughing at some point sometime during this presentation, so my apologies in advance. This is certainly a unique and challenging case to be involved in, in that the underlying rules and laws involved in this, shall we say, program or case have changed substantially since the initiation of the case to the point where we're at here today. As Justice Elrod was getting at when you made the comment, haven't we already made this decision? Indeed, I'd like to thank the Court and your clerk, Mr. Casey, for wording the two recent opinions, in particular the Texas Gulf Seafood case, and also an opinion that was just issued by Judge Elrod, involving an Alabama sign company, which also deals with the fixed-end variable. It's very clear that this Court has set forth a very clear doctrine and interpretation of these issues. Don't look at the labels. Substance over form. Look at the background facts of the situation and make a substantive determination as to whether or not these costs are fixed or variable, which is a simple, logical, well-worded, well-understood doctrine that has now been established by this Court, which now does away with the fact that there are issues which would cause this to be a case that would be worthy for an appellate decision in this situation. This case is a unique situation of how my client typified these COGS as a fixed expense, and it relates only to them in this instance. Excuse me. How do you handle the idea that because it's a COGS, that trumps everything else? I'm sorry. I couldn't hear. How do you handle opposing counsel's argument that because it's a COGS, that it trumps everything else? It doesn't matter what 4D says. Because that's taking a strict construction of the settlement agreement and taking BP's interpretation of those words. COGS can either be fixed or variable on the very definition, and indeed, appellate decisions have come down and said, have followed very much the ruling of what I now refer to as the Texas Gulf Seafood Rule and the fact that you should make a substantive determination. The appellate panels had made that prior ruling in quite an elaborate detail, saying the fact that COGS should be evaluated on a substantive basis. The appellate panels and this circuit are in lockstep on this issue. The appellate panel has made that determination on COGS. This court has made that determination as it deals with the fixed first variable. They should be both determined on a substantive basis. Look at the substance. What do you have in the record showing these are fixed costs? We provided all of the information, and then what we did is we distilled that information down and pursuant to the memo letters that were just submitted. I mean in the record below. We have the table of all of the lease expenses, and what we did is we also graphed my client's production versus the leases. That was provided to us, was it not? No, sir. It was provided to us. You didn't put that in the record below as I understand it. All of the information, this is information that was all available. This was compiled from information that was all available in the record. This would be deemed to be a demonstrative exhibit, Your Honor, to just make it clear to the court. BP had all this information, and all of the prior panels had all of this information. There's no surprise here. There's nothing new. This is the reason BP doesn't really want to address this situation. They know the fact that my client's production was all over the place. This is the fixed expense that we're talking about. I don't know how something could look more like a fixed expense than that. We invite any substantive review of this. We do not think they meet the appellate standard as we sit here today. I think this is a unique case. Again, how my client typified these cogs in this situation, but even if they do arguably reach the standard, send us back, and we'll allow the substantive review, and we'll pass that review. We're certain of that fact. But the doctrine has already been established. Why would this court write its opinions if BP wants to ignore them? It defies logic. This court has set three recent opinions, not because this is a problematic issue, but to clarify the issue, which this court has done very simply, and they know what the rule is, but what they want to do is they want to relate back to this label issue because it gives them an argument for whatever their purposes may be. In this situation, the abuse standard is extremely high, as Judge Elrod was getting at earlier. The court reviews the district's denial of discretion review for an abuse of discretion. The court abuses its discretion if it declines to review a decision that, quote, actually contradicted or misapplied the settlement agreement or had the clear potential to contradict or misapply the settlement agreement. That has not occurred in this instance, based upon the recent holdings of this court. It is also an abuse of discretion to deny a request for review that raises a recurring issue on which the appeal panels are split if the resolution of the question will substantially impact the administration of the agreement. No opinions have been cited since this court has come down with its opinions in November and February that were forwarded by this court, including the Gulf seafood case, where there was a substantive review. So I'd read that again. It is also an abuse of discretion to deny a request for review that raises a recurring issue on which the panels are split if the resolution of the question will substantially impact the administration of the agreement. That will not occur. In contrast, the district court does not abuse its discretion if it denies a request for review that involves no pressing question of how the settlement agreement should be interpreted and implemented, but simply raises the correctness of a discretionary administrative decision and the facts of a single claimant's case. This is how one site contractor typified its rental expenses as COGS. That doesn't change whether they're fixed or variable. That's a classification. That's a label, as has been brought forth in all three of the recent decisions. Get away from the labels. Get to the substance of the issue. The substance of the issue is the costs are fixed for my client. We're not trying to hide anything. We're not trying to hide behind labels. We're not trying to hide behind definitions. We're not trying to say we don't fall into, you don't fall into what has been referred to as the fixed five. And since you don't fall into the fixed five, even though they're actually six in 4C, they've been referred to by the appellate panel as the fixed five. And BP has continually said the fact that there are no decisions that indicate variance from those fixed five. This is not accurate. Appeal panel decisions 2018-67, these are all in brief, 2018-679 and 2018-388 have specific findings of the fact that the fixed five, and Justice Davis is getting at this, as they reference page two, subsection C of exhibit 4C, it is the same enumerated six items, which includes payroll, but payroll is treated differently for accounting purposes. So you get back to the fact that they reference the exact same on 2C. 2C reads variable portions of COGS calculated by excluding salary costs, which are discussed below in the definition of fixed variable payroll expenses. And fixed expenses include within COGS, including amortization, depreciation, insurance expenses, and interest expenses and contract services. The same six slash five items. The appellate panels have gone on to hold the fact that this utilizes the word includes. The use of the word quote includes in quote in the second 4C provision quoted above signals that the five items which follow it are not an exhaustive listing. That they are pulled out for treatment as fixed expenses, not that other expenses included within the claimant's COGS listing, but classified as fixed under 4D must be viewed as having lost their status as such and become variable if not one of the 4C's list of five. In opinion 388, 2018-388, the appellate panels indicate the fact this is a repetitive argument of BP in this situation. And they indicate multiple, in their decision they state quote, multiple appeal panel decisions have addressed expense accounts that are not one of the five accounts listed, but nonetheless must be treated as fixed expenses because the settlement agreement expressly addresses and classifies those accounts as fixed. While these expenses does not appear in claimant's COGS section of their P&L, appeals panel's decisions support settlement program evaluations of COGS expenses to determine their nature. Showing the fact that the appeal panels, like I said, are in lockstep with this court on saying do a substantive evaluation. This is nothing new. Let me ask you, go to your other issue. What do you have in the record that shows that your client is not in the real estate development business? It's not our, Your Honor, my client has never pulled any of the permits for being a real estate developer. My client doesn't derive any income from the sale of real estate. My client does not develop property. My client is a large site contractor. Large site contractor. Large site contractor. What are you referring to in the record now? In the, you mean on what was provided by the panels below? Yeah. Voluminous documents were requested of us. This is a situation where BP did an investigation, tried to look at our website and things of that. Are we, do we do work for real estate developers? Yes, that's what large site contractors do. If you're going to do a subdivision, then you're going to need a company that's going to come in, that's going to clear the land, that's going to put in the infrastructure, that's going to put in the piping, that's going to put in the drainage. Does my client do that type of work? Yes. Does that make them a real estate developer? Absolutely not. Do they work for real estate developers? Yes. That doesn't make them a real estate developer. What was the code that you put on the tax documents as a nature of your business? As a construction company. And they've always held themselves out as a construction company. They're licensed as a construction company in Florida. In Florida, you have to take exams to get the licenses to do this. They're a subterranean contractor. They're a above ground contractor. They primarily, they also have water mitigation licenses. They hold no licenses. They hold no real estate licenses. They don't sell real estate. They're not in the business of real estate. The instance that was talked about, about a developmental park, was done, I believe, in the 1990s by a related, affiliated entity, but never by Woodruff and Sons. And, Your Honor, when you look at the rule set forth in Section 468, Section 2A of Policy 468 states the following, quote, the analysis required by this, quote, real estate developer exclusion shall be performed at the entity level, the entity level in singular, by examining the attributes of the business entity. See also appeal panel decisions 2017-1882, 1454, 2255, 467 from 2014, and these are all cited by BP, where determination was that somebody was not a real estate developer. All the information requested of us was provided pursuant to Section 2C of Policy 468 to test to be applied as to whether a claimant is a real estate developer is, quote, whether it was more likely than not the entity was sufficiently engaged in real estate development activity during 2010. My client never did real estate development activity in 2010. My client's never done real estate development activity in its history, and it's a third-generation company. You have an affidavit from your company on all this? No, Your Honor. We provided the background information. We were never requested to prepare an affidavit. If we'd been requested, we would have been very glad to execute the same, and we can back this up very easily with any documentation that they would ever request. My client's never been a real estate developer. They're not in the business of selling land. They're not in the business of developing and selling land. Never have been. Don't hold the licenses. It's not what they do. They would then be in competition with their customers. It just wouldn't make sense on a multitude of levels. BP has not cited any appeal panel decisions or Fifth Circuit court opinions that found that the related entity theory holds water. It does not. There's not a single opinion out there to that effect. We don't meet the definition of a real estate developer. We don't make money as a real estate developer. It's not the line of business that we've ever been in. You're proving the negative, Your Honor, but on this instance, it's pretty easy to do. We've never had that involvement. If BP had some contrary evidence, if it was available, then you sure would have heard about it today. And there isn't any in existence. We're very clear on that issue. We have not and never have been a real estate developer. And all this information has been provided to the lower tribunals. And BP has done a very exhaustive search because of the size of this claim. I think in closing, Your Honors, the Texas Gulf Seafood, and I would say I would now call it the Texas Gulf Seafood rule, is very clear. That is a rule that this court has set forth. It's been set forth in the two opinions that were provided to us for briefing. And it's also been even more clearly set forth in Judge Elrod's recent opinion dealing with the Alabama Sign Company. So in this situation, there is no ambiguity. The rule is there has to be a substantive review is it fixed and variable. There's nothing unique about this case. My client's got a case where, yes, we designated it as COGS. That doesn't make us a bad company. That was an accounting decision. And even under COGS, they can be fixed or variable. As I've said before, in this instance, all of the information clearly indicates this is a fixed expense. All of the opinions from this court recently are very clear. Don't, you know, BP, don't look at the labels. Look at the substance of the situation. When the program looks at the substance of the situation, they have determined that these costs were fixed. They are fixed for these reasons. My client should prevail in this situation. For some reason, and I believe this court certainly has jurisdiction to take jurisdiction over the issue and make the determination on fixed and variable, or can make the determination of the fact that there has been no abuse of discretion based upon the extremely high standard in these matters. Either way, my client should win on that issue. If my client gets remanded down and has to provide this information as occurred in the cases that were forwarded, then that would certainly be a situation where we'd provide the information to the lower tribunal, and we'd feel very confident we'd prevail in the interest of judicial economy. I think it's clear, the fact that in this instance, the district court did not abuse its discretion and that my client should prevail. Thank you. All right. Back to you, Ms. Malkina for rebuttal. No questions. You're good. I'm sorry. Your honors, may I proceed? Yes. Thank you. As opposing counsel repeatedly stated throughout his argument, these costs of goods sold. Opposing counsel agrees that these are costs of goods that are at issue. And when you have costs of goods that are at issue, exhibit 4C's rule on costs of good applies. Opposing counsel tries to work around that rule through this court's recent decisions in Texas Gulf Seafood and the management fee case. Woodruff repeats its belated argument in its supplemental submission that the CSSP should perform a freewheeling inquiry into the nature of the expenses. First of all, your honors, that argument is forfeited because Woodruff did not make it in its brief to this court. In any event, that argument impermissibly reads out as well as exhibit 4D's mention of COGS. Counsel, opposing counsel says that the appeals panel are consistent in their treatment, that it's not a list of five exclusive categories or six exclusive categories. I'm going to get into an issue of five or six. But that they consistently say that we look substantively. And so do you have examples of appeals panel decisions where the appeals panels are saying on multiple occasions that because it's not one of the five or six categories that it has to be considered variable? Absolutely, your honor. Here, at least nine of other appeal panels. You mentioned nine other appeals. Said because it's not just simply only for the reason that it's not listed on the one to six, that it's got to be variable. Four appeal panels, your honor. And this is 20174154, 20171931, 20171204, and 201518. Four appeal panels have treated equipment rentals classified as COGS as variable. They do so in most instances. Across the board, are they doing it because of the rule? Are they doing it because in those businesses, it shows as a matter of fact that they're variable? Because of the rule, your honor. Just say, because of the rule, we're bound, regardless of what the true facts are. I would say there's about one to two sentences in each of the nine decisions, your honor. And in each of those nine decisions, in those one to two sentences, with the exception of one, the appeal panels either look to Exhibit 4C's rule, or they look to the listing of the rental expenses on Exhibit 4D. Is counsel mischaracterizing? Well, you said, or look to 4D, which would be, that's consistent with opposing. Is opposing counsel misrepresenting or wrong? I'm not trying to make you catch dispersions. That many appeals panels say, it doesn't have to be in the magic categories. We look at the substance, that the appeals panels are routinely doing that. I believe that's wrong, your honor. If you look at the nine decisions, five of them look towards Exhibit 4D, and the others look towards Exhibit 4C. One's a little less clear in that one. But they make that 4C, if it's not specifically spelled out as one of those categories, it's automatically put in the variable, regardless of what the facts are. Is that what you're telling me, that those appeals panel decisions say? As we understand them, the appeal panel decisions are not looking at the facts. They're taking the fact that you have COGS, and then applying either Exhibit 4C or 4D. 4C, for the ones that come out the way BP believes, that Exhibit 4C requires them. Same question about related entity theory. Are there appeals panels that hold consistent with what you've argued here with us today, that because of related businesses that are in real estate, that a party is presumed to be a real estate developer? There are appeal panel decisions, there's three, and they're listed in our briefs, that look at a claimant's work for its real estate developer affiliates, and making the determination that that claimant is an excluded real estate developer. In two of those cases, the appeal panel specifically reject the claimant's argument that it's a construction company, and consider its work for its real estate developer affiliates in determining whether that claimant is an excluded real estate developer. Are there appeals panel decisions on the other side of that, except for putting aside this case? Yes, Your Honor. There's an appeal panel split, about 15 appeal panels we found have considered this issue. And it's not just on the facts, it's actually making a legal point. Appeal panels on the other side, for example, Your Honor, have said that BP's argument that you should look to the work that a claimant does for its real estate developer affiliates is a not allowed guilt by association argument that's not allowed under the settlement agreement. We understand that as a legal determination about what facts an appeal panel can consider in making the determination under the settlement agreement. Unless the court has further questions for the reasons discussed today, NMB. Let me just ask you, on the substance of the matter, can you point to any evidence in the record that would refute counsel's evidence that the cost line on equipment rental was constant and did not vary along with revenue? Your Honor, on the evidentiary questions, the leases are not in the record. So we don't know what type of equipment is that issue. We don't know the number of leases that are issue. We don't know the length of those issues. Can you refute the evidence in that graph that showed the equipment rental line as being straight and the variation in the revenue? Your Honor, we don't have the underlying materials. Can you refute what's in the record? Do you have any evidence to the contrary? The evidence hasn't been provided here. Pardon? Your Honor, the evidence isn't in the record here. And that's because everyone agrees that this is a cost of goods sold. And because it's a cost of goods sold, Exhibit 4C's role applies. And therefore, Exhibit 4C, as a matter of law, provides what it is that the CSSP is supposed to do in this instance. And that's treat the expenses as variable. Thank you very much, Your Honor. All right. Thank you, counsel. Both sides, this completes the argued cases for today. These cases will be submitted. And the panel will stand in recess until 9 a.m. tomorrow.